RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0010p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

SCOTT ALLEN TOMEI,

　　　　　　　　*Plaintiff-Appellee*,

　　*v.*

PARKWEST MEDICAL CENTER; COVENANT HEALTH,
　　　　　　　　*Defendants-Appellants*.

⎱
⎰ No. 21-5448

Appeal from the United States District Court for the Eastern District of Tennessee at Knoxville.
No. 3:19-cv-00041—Clifton Leland Corker, District Judge.

Argued:  December 7, 2021

Decided and Filed:  January 18, 2022

Before:  BOGGS, THAPAR, and BUSH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Broderick L. Young, ARNETT, DRAPER & HAGOOD, LLP, Knoxville, Tennessee, for Appellants.  Andrew Rozynski, EISENBERG & BAUM LLP, New York, New York, for Appellee.  **ON BRIEF:**  Broderick L. Young, Devin P. Lyon, Paul E. Wehmeier, ARNETT, DRAPER & HAGOOD, LLP, Knoxville, Tennessee, for Appellants.  Andrew Rozynski, David John Hommel, Reyna Lubin, EISENBERG & BAUM LLP, New York, New York, for Appellee.

———————————

**OPINION**

———————————

THAPAR, Circuit Judge.   The plaintiff, Scott Tomei, sued Parkwest Hospital and Covenant Health for discrimination under the Affordable Care Act.  But Parkwest says Tomei's suit is dead on arrival because it's time-barred.  We disagree.

I.

Scott Tomei went to the hospital after he fell and hurt his foot and leg.[1]  He is deaf and communicates using American Sign Language (ASL).  So when he arrived, he asked for an interpreter.  But the hospital—Parkwest—never provided one.  Medical staff simply x-rayed his knee, gave him an antibiotic and ibuprofen, and sent him home.

But the medication didn't help.  Tomei's pain got worse.  So two days later he went to the emergency room, where doctors determined he had blood clots in his leg.  The doctors sent him back to Parkwest in an ambulance and requested that Parkwest provide an interpreter for Tomei.  Yet when he arrived, Parkwest refused.  Instead, the hospital offered a Video Remote Interpreting device, which promised to connect Tomei with an off-site interpreter via webcam.  But the hospital's firewall made the connection so glitchy that Tomei couldn't effectively communicate.

A Parkwest doctor performed surgery for his blood clots.  Afterward, Tomei continued to suffer from "intense burning and pins-and-needles pains."  R. 1, Pg. ID 6.  But without an interpreter, he couldn't tell the medical staff about what he was experiencing.  And even when the pain became so unbearable that Tomei was screaming in agony, Parkwest refused him an interpreter.  After a few nights at the hospital, the doctors sent Tomei home.  He was sedated, and his foot was "blue." *Id.*

---

[1]Because this appeal involves a motion to dismiss, we must take the facts in the light most favorable to the plaintiff, Tomei.  *See Meador v. Cabinet for Hum. Res.*, 902 F.2d 474, 475 (6th Cir. 1990).

The next day, two medical staff from Covenant Health visited Tomei for a physical therapy appointment.  But his foot was in such bad shape that they couldn't complete the physical therapy.  So they called Tomei's doctor at Parkwest, who advised that Tomei should schedule an appointment with his family doctor.

Tomei's family doctor sent him to another hospital—the University of Tennessee Medical Center.  There, a different story unfolded:  The hospital immediately provided Tomei with in-person interpreters.  The interpreters helped him through a second surgery for his blood clots (less than one week after his surgery at Parkwest).

But Tomei's condition didn't improve.  Doctors amputated nearly one third of his leg. The staff at the new hospital told him through an interpreter that the amputation could have been avoided if he had come to them earlier.  This was news to him:  Neither Parkwest nor Covenant Health had told Tomei that there was any chance he'd lose his leg.

About fifteen months after he was first denied an interpreter at Parkwest, Tomei sued. He claimed that the defendants, Parkwest and Covenant Health (collectively, Parkwest), had violated § 1557 of the Patient Protection and Affordable Care Act (ACA).  The defendants moved to dismiss, arguing that Tomei waited too long to sue.  They say his suit is time-barred. Why?  Because they contend that Tennessee's one-year statute of limitations for personal-injury suits applies through the Rehabilitation Act of 1973.  The district court disagreed.  It denied Parkwest's motion to dismiss and held that the standard federal statute of limitations—four years—applied instead.  But it certified the question for an interlocutory appeal.

II.

Congress has set a default statute of limitations for federal causes of action.  Unless federal law provides otherwise, a civil action "arising under" a federal statute enacted after December 1, 1990, is subject to a four-year statute of limitations.  28 U.S.C. § 1658(a).  This presents two questions for us.

First, does Tomei's claim "arise under" a federal statute enacted after 1990?  If it doesn't, we end the inquiry—the four-year statute of limitations doesn't apply, and Tomei's suit is

untimely under the applicable state statute of limitations.  If it does, we ask the second question:  Does a federal statute otherwise provide a different statute of limitations?

Some background on the statutes at issue.**2**  Tomei sued under the Affordable Care Act, alleging that Parkwest violated the ACA's nondiscrimination provision by failing to accommodate his disability.   That provision bars certain health-related programs from discriminating on the grounds "prohibited under" the Rehabilitation Act.  42 U.S.C. § 18116(a) (referencing 29 U.S.C. § 794).  It also incorporates "[t]he enforcement mechanisms provided for and available under" the Rehabilitation Act's own nondiscrimination provision.  *Id.*  Courts interpreting the latter provision, which was enacted before 1990, have held the law borrows state statutes of limitations.  *See McCormick v. Miami Univ.*, 693 F.3d 654, 662–63 (6th Cir. 2012).

Thus, the fate of Tomei's claim depends on which statute of limitations applies.  If the Rehabilitation Act's borrowed statute of limitations applies—here, Tennessee's one-year personal-injury statute of limitations—Tomei's suit is untimely.  But if the standard federal four-year statute of limitations applies, his suit may proceed.

A.

Turning to the first question:  Does Tomei's claim "arise under" the ACA, which was enacted in 2010, or the Rehabilitation Act, enacted in 1973?  To answer it, we look to the text.  The ACA explains how it relates to the Rehabilitation Act.  It adopts the Rehabilitation Act's prohibited ground for discrimination (disability) and its enforcement mechanisms.  And it does so to prescribe the relevant standards governing "violations of *this subsection*."  42 U.S.C. § 18116(a) (emphasis added).   In specifically identifying violations of the ACA's nondiscrimination provision, the statutory language tells us that violations of that section of the ACA are different from violations of the Rehabilitation Act.  The ACA does not, for example, direct litigants to file claims under the Rehabilitation Act itself.  Nor does it authorize "Rehabilitation Act claims" for a new set of parties, or amend the Rehabilitation Act in any way.

---

**2**Section 1557 of the ACA is codified at 42 U.S.C. § 18116.  Section 504 of the Rehabilitation Act is codified at 29 U.S.C. § 794.

Rather, it cross-references the Rehabilitation Act while creating a new law with its own violations.

This reading reflects our familiar jurisdictional "arising under" inquiry. *See* 28 U.S.C. § 1331. In general, a "suit arises under the law that creates the cause of action." *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). Dictionaries confirm this understanding. To arise means to "originate" or "spring up" from something. *Arise*, Black's Law Dictionary (6th ed. 1990); *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–83 (2004). So we ask which statute grounds Tomei's action.

Tomei brings his cause of action under the ACA—not the Rehabilitation Act. Indeed, he alleges that Parkwest violated the ACA's nondiscrimination provision—not the Rehabilitation Act's. And he seeks to recover under the ACA—not the Rehabilitation Act. In short, Tomei's claim "arises under" the ACA.

Parkwest resists this conclusion by pointing to the Supreme Court's decision in *Jones*, which interpreted the general statute of limitations' "arising under" language to require that a new law "ma[kes] possible" the plaintiff's claim. 541 U.S. at 382; Appellants' Br. at 22. As Parkwest sees it, if Tomei could have brought his claim under the Rehabilitation Act, his suit doesn't arise under the ACA.

But Parkwest misses the point. To be sure, a litigant like Tomei may have been able to sue under the Rehabilitation Act before Congress enacted the ACA's nondiscrimination provision. But that does not mean the ACA didn't still make *this* suit possible. We rely on the claim the plaintiff is bringing—not hypothetical claims he could have chosen instead. And here, Tomei made a choice: He sued under the ACA.

Examining *Jones* in context also shows how Parkwest's reliance on the case is flawed. *Jones* asked whether the general four-year statute of limitations applied to a Civil Rights Act suit "made possible" by a post-1990 amendment to that law. 541 U.S. at 382. The Supreme Court held that it did, because "[a]n amendment to an existing statute is no less an 'Act of Congress' than a new, stand-alone statute." *Id.* at 381 (quoting 28 U.S.C. § 1658). The "made possible" inquiry on which Parkwest hangs its hat was designed for use in the statutory-amendment

context. If an amendment to an existing law is the reason a plaintiff can sue (in other words, makes the suit possible), then the suit arises under that amendment. But if the plaintiff could have sued under that law before the amendment, then the suit arises under the original statute.[3] All that is immaterial here. There is no amendment to parse—Tomei's use of a new statute with its own cause of action itself answers the question.

Counting Tomei's claim as an ACA claim makes practical sense, too. Under Parkwest's broad reading of *Jones*, prospective plaintiffs couldn't simply sue under the federal law where they find a cause of action. Instead, they would have to research whether any *other* law could provide a cause of action for the same injury—just to discern the statute of limitations that applies to the suit. Indeed, that task might even mean "rattling through dusty attics of ancient writs" to see if an old common-law cause of action exists. *Chauffeurs, Teamsters & Helpers Loc. No. 391 v. Terry*, 494 U.S. 558, 575 (1990) (Brennan, J., concurring in part and concurring in the judgment). This is a daunting task, and one that diverges from the straightforward nature of the general federal statute of limitations. Plaintiffs need not comb through the statute books to answer this simple antecedent question. Finding a newly enacted law with its own cause of action is enough.

This approach offers predictability as well. Rather than inviting judges and litigants to investigate whether a plaintiff had a plausible claim before 1990, a bright-line rule—that a claim arises under the law that creates the cause of action—brings clarity and consistency. *See Jones*, 541 U.S. at 380 (noting that one of the aims of the general federal statute of limitations was to avoid "so much unnecessary work for federal judges"). These values serve judges and parties alike. *See* Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1179, 1183 (1989).

---

[3]It may be helpful to use the statute in *Jones* as an illustration. The plaintiffs in that case sued under the Civil Rights Act for violations stemming from a hostile work environment. Before the Civil Rights Act was amended in 1991, their claim would have been a non-starter: The Supreme Court had held that the Act didn't protect against harassing conduct in an employment setting. *Jones*, 541 U.S. at 372–73 (discussing *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)). But in response to *Patterson*, Congress amended the Act in 1991 to include hostile-work-environment claims. *Id.* So the Court held in *Jones* that the plaintiffs' claims were made possible by the amendment. *Id.* at 383. Thus, the general four-year statute of limitations applied—not the two-year state statute of limitations that would have applied under the original statute.

The statutory text answers the question here, so we need not go beyond it.[4]  But for those who remain skeptical, the ACA authorizes the Secretary of Health and Human Services to put forth regulations to implement its nondiscrimination provision.  42 U.S.C. § 18116(c).  And indeed, the Secretary has done so.  These implementing regulations also explain why Tomei's cause of action arises under the ACA rather than the Rehabilitation Act.  The regulations adopted to implement the ACA's nondiscrimination provision provide a different set of standards for regulated entities than the Rehabilitation Act's regulations do.  The Rehabilitation Act holds public accommodations like Parkwest to a lower standard than government entities.  *See* 28 C.F.R. §§ 35.160(b)(2), 36.303(c)(1)(ii).  Under the Rehabilitation Act, both sets of actors must ask individuals with disabilities about their choice of aid.  But only government actors are almost always obligated to honor that choice; public accommodations (like Parkwest) need only take it into account.  *See id.*; *Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 65 (2d Cir. 2021).  By contrast, the ACA holds all covered health programs to the same, higher standard.  *See* 45 C.F.R. § 92.102(a).  Both groups must defer to the individual's request.  *Id.*  As the Second Circuit (the only other circuit to address this question) recognized, the change in standard also shows that claims like Tomei's are grounded in the ACA—not the Rehabilitation Act.  *See Vega-Ruiz*, 992 F.3d at 65–66.

B.

Because Tomei's claim arises under the ACA, we look to the next question:  whether any federal law provides a different statute of limitations for his claim.  *See* 28 U.S.C. § 1658(a).

First, the ACA.  Parkwest fails to identify anything in either the Act or its implementing regulations that explicitly sets a statute of limitations for violating the ACA's discrimination bar.  Nor do we see one.  While constructing this mammoth statute, Congress had every opportunity to include a section setting a statute of limitations.  But it did not.

---

[4]Indeed, the defendants rightly argue that only "an *Act of Congress* enacted after" December 1, 1990, can trigger the general four-year statute of limitations—that is, a statute rather than a regulation.  28 U.S.C. § 1658(a) (emphasis added).  It would make little sense if a new administration could change the statute of limitations for a post-1990 cause of action by adopting rules mapping pre-1990 standards for liability.

Without an explicit ACA statute of limitations, we scrutinize the nondiscrimination provision of the ACA for anything else that might "otherwise provide[] [one] by law." *Id.* But here too, we see no statutory text limiting the timeline for discrimination suits. Instead, Parkwest points to an ACA provision dealing with enforcement mechanisms: "The enforcement mechanisms provided for and available under . . . [the Rehabilitation Act section] . . . shall apply for purposes of violations of this subsection." 42 U.S.C. § 18116(a). In other words, courts must apply the enforcement mechanisms of the Rehabilitation Act to ACA claims. Parkwest argues that the Rehabilitation Act's "enforcement mechanisms" include the statutes of limitations courts borrow from state laws for Rehabilitation Act claims. Thus, it argues, Tennessee's one-year bar applies here. *See McCormick*, 693 F.3d at 662–63.

But that conflicts with the ACA's text. As our court has held, an "enforcement mechanism" is a tool "for compelling compliance with the substantive requirements" of a statute. *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 239 (6th Cir. 2019); *see also id.* (defining "enforcement" and "mechanism" (citing 5 *Oxford English Dictionary* 245 (2d ed. 1989); 9 *id.* at 536)). Thus, we import only the means for enforcing the Rehabilitation Act that are available under that statute—nothing more.

This follows not just from the text, but also the statutory structure. The Rehabilitation Act includes enforcement provisions that specify the *ways* discrimination may be remedied. *See* 29 U.S.C. § 794a; *see also* 42 U.S.C. § 12133 (identifying the processes in 29 U.S.C. § 794a as remedies in section titled "Enforcement"); *Vega-Ruiz*, 992 F.3d at 65 n.4 (identifying types of remedies and investigations as "enforcement mechanisms"). For example, enforcement against public accommodations—like Parkwest—can take multiple forms, including a private cause of action or compliance reviews by the Attorney General. *See* 29 U.S.C. § 794a (incorporating 42 U.S.C. §§ 2000d–2000d-7); *see also Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (recognizing a private right of action in the Rehabilitation Act). Private suits and agency actions are clearly means for "compelling adherence" to the nondiscrimination statutes. *See Doe*, 926 F.3d at 239 (defining "enforcement mechanism" as "the process for compelling compliance

with a substantive right"). Statutes of limitations—the rules that apply to the means and processes themselves—are not.**5**

Parkwest's main source for its argument to the contrary—a footnote from an out-of-circuit district court opinion—is unconvincing. The opinion interprets "enforcement mechanisms" to include the Rehabilitation Act's "rights of action and corresponding remedies, including all of their limitations." *Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 699 & n.3 (E.D. Pa. 2015). But in context, these "limitations" refer to the substantive standards and methods for inducing compliance that are available under the Rehabilitation Act—not administrative rules like the statute of limitations. *See id.* at 698–99, 699 n.3. The court in *Gilead* is right—the ACA does adopt the Rehabilitation Act's rights of action and remedies, including, for instance, limitations on compensatory or punitive damages. It's Parkwest that has it wrong in grouping the statute of limitations in with those rights and remedies.

*       *       *

For the reasons set forth above, the standard four-year statute of limitations for federal claims applies here. So we affirm the district court's thoughtful opinion and allow Tomei's suit to proceed.

---

**5**Parkwest claims that exhaustion requirements are included in the specified "enforcement mechanisms" and that statutes of limitations are parallel. *See* Reply Br. at 12–14 (citing *Galuten v. Williamson Cnty. Hosp. Dist.*, No. 21-5007, 2021 WL 3043275, at *4 (6th Cir. July 20, 2021)); *see also Doe*, 926 F.3d at 239–40 (discussing exhaustion in dicta). But this attempt to draw a parallel faces two key hurdles. First, the Age Discrimination Act's exhaustion requirements are included in the statutory text—indeed, in a section entitled "Enforcement"—while our use of state statutes of limitations is not in the Rehabilitation Act's text. *See* 42 U.S.C. § 6104(e)(2), (f). And second, this court has no binding precedent that exhaustion requirements count as enforcement mechanisms under the ACA. So this argument is unpersuasive.